SAMUEL A McGREGOR, QUI TAM, v. THE ERIE RAILWAY COMPANY.

1. In an action *qui tam*, &c., against the Erie Railway Company, for taking unlawful tolls on parts of their lines within this state, the company may properly be considered as a corporation of this state, and amena-ble as such to the provisions of the act of March 17th, 1870, respecting unlawful tolls.
2. Although the Erie Railway Company is a foreign corporation, it is, at the same time, domestic to the full extent of the powers and franchises confirmed and invested in it, in New Jersey.
3 A corporation may have a two-fold organization, and be, so far as its relations to our state are concerned, both foreign and domestic.
4. The company, in making defence in this suit for the penalty, is not estopped from showing that the forty-eight packages, alleged to have been overcharged, could have been charged at a higher rate, or that they were all, or in part, express matter and not fully charged as such, or that by small packages the company could have charged more.

McGregor, qui tam, v. Erie Railway Co.

5. The act of March 17th, 1870, granting certain powers and franchises in this state to the Erie Railway Company, in connection with other railroads therein mentioned, although expressed in broad terms, cannot be considered as allowing the company to possess and enjoy the franchises of any company with which it does not unite.

On case certified from the Passaic Circuit.

Argued before BEASLEY, CHIEF JUSTICE, and Justices DEPUE and BEDLE.

For plaintiff, *Thomas D. Hoxsey* and *S. Tuttle.*

For defendants, *I. W. Scudder, Leon Abbett,* and *James B. Vredenburgh.*

The opinion of the court was delivered by

BEDLE, J.   This suit is brought by a common informer for a penalty of $250, under the act of March 17th, 1870, to amend an act entitled " An act to prevent the taking of unlawful tolls or fares on canals and railways," passed March 17th, 1839, (*Laws of* 1870, *p.* 64.) McGregor & Post, expressmen at Paterson, transported on the Erie railway, March 24th, 1870, forty-five packages of goods, estimated at eighty-five hundred pounds.   On it they paid $8.76, of which $4.25 was called terminal in the bill, the balance, $4.51, evidently being made out on the basis of $1.06 per ton.   The bill is as follows:

" For transportation from J. C.
" 45 pkgs., 8,500,   .   .   .   .   ₀   $4 51
" Term'l,   .   ₀   .   .   .   .   4 25

$8 76."

Several of the questions arising in this suit are disposed of in the case of *McGregor* v. *The Erie Railway Company,* just decided.   Those remaining will be referred to.

*First.* It is claimed by the defendants that they are not a corporation of this state, amenable to the act.

The original act of March 12th, 1839, (*Nix. Dig.* 790, § 28,*) recites as follows: " Whereas, complaints have arisen that some of the incorporated companies of this state have

* See *Rev., p.* 914, § 39.

taken a greater amount of fare, or toll, than is allowed by law, and also of the unequal, fluctuating and unlawful rates of tolls or passage money upon the several canals or railroads of this state, therefore," &c.

The act of March, 1870,[*] recites as follows: " Whereas, the evils recited in the preamble of the act of which this is amendatory, have greatly increased since the passage of said act, therefore, Be it enacted, &c., that every incorporated company or companies in this state, which is or are or shall be authorized by law to take toll or to charge for transportation of passengers, goods, wares, and merchandise, which shall directly or indirectly take or demand of any passenger, person, or under any pretence whatever more than the charge, toll, rate, or fare allowed by law, shall forfeit and pay the sum of $250 for each and every such offence, to be recovered in an action of debt by any person who may sue for the same, the one half to the prosecutor and the other half to the use of the state, before any court of competent jurisdiction, together with the costs of prosecution." The second section of this act, in words, repeals the act of 1839.

Is the Erie Railway Company, then, to be considered as a corporation in this state, authorized by law to take toll or to charge for transportation of passengers and merchandise?

The Erie Railway Company has succeeded, by sale and conveyance, to the property, rights, and franchises of the New York and Erie Railroad Company, which that company had under the leases of the Paterson and Hudson and Paterson and Ramapo roads, and the legislation relating thereto, which sale and conveyance were fully confirmed by an act to confirm the sale under foreclosure of the property, rights, and franchises of the New York and Erie Railroad Company, approved March 13th, 1862, so that by virtue of that act, taken in connection with a preliminary act in contemplation of such sale, entitled " An act to facilitate the foreclosure of mortgages given by the New York and Erie Railroad Company, and to aid the purchasers under such purchase in acquiring title," approved March 22d, 1860, the Erie Railway Com-

---

[*] See Rev., p. 914, § 39.

pany has become invested, as lessee in its corporate name, of the franchises, powers, and property of those two companies, the Paterson and Hudson and the Paterson and Ramapo, and is now running the roads of said companies in such corporate name, by force of legislative authority in this state, and among the franchises it accordingly possesses and enjoys, is that of taking toll and charging for transportation. There can be no question that the Erie Railway Company, in operating those two roads, does it by authority of our statutes, and charges freight accordingly. That part of the Erie line over the Long Dock highway, as already decided, is operated under the Paterson and Hudson charter, and is but, in effect, a continuation of the Paterson and Hudson road. It is true that the Erie Railway Company is a foreign corporation, yet, at the same time, it is domestic to the full extent of the powers and franchises confirmed and invested in it here in New Jersey. A corporation may have a two-fold organization, and be, so far as its relation to our state is concerned, both foreign and domestic. It may have a corporate entity in each state, yet in its general character be of a bi-fold organization. This doctrine is sustained not only upon principle, but by the following cases : *Sprague* v. *Hartford R. R. Co.,* 5 *R. I.* 233 ; *Maryland* v. *Northern R. R. Co.,* 18 *Maryland* 104 ; *Ohio & Miss. R. R. Co.* v. *Wheeler,* 1 *Black* 286 ; *State, Easton Bridge Co.,* v. *Metz,* 3 *Vroom* 199.

The title of the act of 1862 declares that it is an act not only to confirm the sale under the foreclosure of the property, rights, and franchises of the New York and Erie Railroad Company, but to *complete the organization of the Erie Railway Company,* and the powers and provisions of that act, with the preliminary act of 1860, are such as necessarily to give the Erie Railway Company the character of a corporation of this state, although it is not so expressly declared. *Liverpool Ins. Co.* v. *Mass,* 10 *Wall.* 567. There is not a mere incidental power conferred or confirmed, but the intrinsic nature of the franchises and privileges the Erie Company is authoriz d to possess and enjoy in its corporate name, as well as the liabili-

ties imposed by the act of 1862, were such as, *ipso facto*, to make it a domestic corporation. And this conclusion, although it may be disadvantageous in this penal suit, must be to the advantage of the defendants in giving to them the benefits of general legislation, in increasing the rates of freight and transportation that railroad companies in the state may charge.

The defendants come within the provisions of the penal act of 1870, as a corporation in this state, authorized by law to charge for transportation. I think, also, from the mere fact that a foreign corporation charges freights under a right confirmed by our legislature, it must necessarily be treated in the sense of the penal act as a corporation in this state, authorized by law so to charge.

The next question is, whether, in this case, the company is estopped from showing that the forty-eight packages could have been charged at a higher rate by reason of an under estimate, or that they were all, or part, express matter, and not fully charged for as such, or that, as small, packages, the company could have charged more.

The particular nature of this defence was referred to in the other case, and the company held estopped against the plaintiffs.

That doctrine is not applicable to this suit for the penalty. There is no privity between a common informer and the company, and none of the reasons that would produce an estoppel between private parties can affect a case like this. The demand for the penalty is based upon the ground that the company has taken or demanded more than authorized by law. The defendants could take less is they chose, or they could so deal with their customers as to be precluded from claiming more than they have charged. But a penalty can be recovered only upon the ground that more is taken or charged than is authorized. It is true that in this bill part of the total amount is called terminal. Even if that item was intended to apply to the Long Dock road, which is, as already held, a part of the defendants' continuous line, and run under

the Paterson and Hudson charter, yet if, under the Paterson and Ramapo and the Paterson and Hudson charters, or any general acts affecting these lines, the company could legally have charged the total collected on this bill, I see no reason for an estoppel against them in favor of a penalty. The result would then be that if, in any way, it could be shown that the total amount of this bill does not exceed what the company might lawfully have charged, there can be no recovery of the penalty. The plaintiffs, by producing a bill from the defendants, made out as this is, show a *prima facie* case, the presumption being that the weight was correct, and the estimate of the goods according to their true character. Such at least would be the presumption, in the absence of sufficient evidence to show a practice to underweigh, or to estimate or classify the goods in a different manner from what the law would allow to the defendants.

In this connection, a question arises as to the right of the company to charge expressmen for several packages, under the acts of March 24th, 1852, and the supplement of March 17th, 1854, (*Nix. Dig.* 786,) the same as if the packages had been brought by the owners separately. By the first act, twelve and a half cents could be charged for any small package, and by the supplement it was provided that the term several packages shall not be held to include bundles and packages where more than five bundles or packages are *delivered at one time,* and where several bundles and packages so delivered, can be in the aggregate readily weighed, either as light or bulky goods or as ordinary freight. The business of expressmen, they being common carriers, must be recognized by the courts as legitimate on railroads, and the carriers the same as the owners of the goods, under those acts. If two or more should combine to defraud the company out of the rates that could be charged each, by sending their goods together, that would not be tolerated. But when packages are brought in regular course of transit, by a common carrier, he is entitled to the benefit of the supplement of 1854, the same as the owner would be if he brought his own goods.

One other question remains. The defendants set up that under an act granting certain powers and franchises in this state to the Erie Railway Company, passed March 17th, 1870, (*Laws of* 1870, *p.* 1166,) they can charge the same rates for freight that any other railroad company can, in the counties of Sussex, Passaic, and Morris, and offered in evidence certain railroad acts in the county of Sussex, most, if not all, being for local roads, and to subserve chiefly mining interests, and some of which allow for freights as high as thirty cents per ton. It is not necessary to consume much time with this act. It can have no application to the company's leased roads. It allows the construction, by the Erie company, of a branch road from some point on the leased roads of the company in the counties of Hudson and Passaic, to some point on the line between the States of New York and New Jersey, at or near Port Jervis, with power to connect the same with any other roads in this state built or authorized to be built in the counties of Passaic, Morris and Sussex, and giving the company power to survey, lay out, construct, equip, maintain, and operate said railroad; and then further enacts, that all the rights, powers, privileges, and franchises granted to any other railroad company authorized to build or operate a road in any of said counties, be and they are hereby conferred upon the said Erie Railway Company, in respect to its branch road and its leased lines; and that the lands required for the said company for the said railroads hereby authorized, and for depots thereon, may be taken in the same manner, to the same extent, and under the same mode of compensation, provided for by law in respect to any of the railroads above mentioned

This language is very elastic, but cannot be stretched to allow the Erie company to possess the franchises of any company with which it does not connect. If intended to confer upon the Erie company, separately, the powers and franchises of any company in either of these counties, then could the Erie, at its own option, alter its organization, and in this general, uncertain, and which might be deceptive way, assume

those of any of the companies in the three counties that they might elect. Such could not have been the intention of the legislature. The language can have no further meaning than to confer upon the Erie company, so far as a conjoint line formed by the branch and the leased line and any road with which it may connect is concerned, the powers and privileges with reference to such line, as the company may have with which the connection is made. This act gives the Erie Railway Company no additional rights on their leased lines separately, and whether it will reach to the full extent stated, must not now be considered as decided. It certainly can go no further, and, the defendants have no benefit under it in this case.

It was argued that the act was void, as repugnant to that provision of the constitution declaring that every law shall embrace one object, and that shall be expressed in the title. Inasmuch as the act has no application to the case before us, it would be unwise now to determine that question. It may, however, be said that question is not free from difficulty.

Whatever the total amount charged by the defendants in this particular case exceeded what they could lawfully have charged, will depend upon a determination of the facts to some extent, and it is therefore deemed best, a jury having been waived, to advise the Circuit according to the principles contained in this opinion, and that in the case of *McGregor* v. *The Erie Railway Co.*, so far as applicable, and to pronounce judgment as the facts under these principles will warrant.

Circuit Court advised accordingly.